GERARD HANLON
HANLON DUNN ROBERTSON SCHWARTZ
33 Market Street
Morristown, New Jersey 07960
Tel:  (973) 267-8895
ATTORNEY FOR PLAINTIFF CYNTHIA QUINT

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## DIVISION OF NEWARK

| | |
|---|---|
| **CYNTHIA QUINT**, | ) |
| | ) CASE NO. _____ |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **VIKING RIVER CRUISES, INC.**, | ) **VERIFIED COMPLAINT AND** |
| | ) **DEMAND FOR JURY TRIAL** |
| Defendant. | ) |
| | ) |

COMES NOW, plaintiff **CYNTHIA QUINT** ("Plaintiff") in the above-

styled matter, and, by and through her undersigned counsel of record, files and

serves this her Complaint against defendant **VIKING RIVER CRUISES,**

**INC.**,("Viking" or "Defendant"), and shows the Court as follows:

## I.    PRELIMINARY ALLEGATIONS

1.     This matter falls under the admiralty and maritime jurisdiction of this

Court within the meaning of Fed. R. Civ. P. 9(h).

1

2.     Plaintiff CYNTHIA QUINT is over the age of 18 and is a citizen of the State of New Jersey who resides within this District.

3.     Defendant VIKING RIVER CRUISES, INC. is a corporation organized under the laws of the State of California, with its headquarters and principal place of business located at 5700 Canoga Ave. Suite 200, Woodland Hills, CA 91367.

4.     Defendant at all times material hereto, personally or through an agent:

a.     operated, conducted, engaged in, or carried on a business venture, through agents or otherwise, in this District in the State of New Jersey or had an office or agency in this District in the State of New Jersey;

b.     was engaged in substantial and not isolated business activity in this District in the State of New Jersey;

c.     as set forth in more detail herein, Defendant's actions and/or omissions caused injury to the Plaintiff outside this state, while, at, or about the time of such injury, Defendant was engaged in solicitation of business within this District in the State of New Jersey; and

d.     at all times material hereto, Defendant was engaged in the business of providing to the public of New Jersey in general and to the Plaintiff in particular, on a systematic and regular basis, for compensation, vacation cruises aboard

2

Defendant's vessel.  Defendant is in possession of the Plaintiff's ticket contract, a copy of which will be produced through discovery hereunder.

5.     At all times material hereto, Defendant has operated interactive Internet web sites fully accessible to residents of the State of New Jersey, and such Internet web sites are interactive to a degree that reveals Defendant's specific intent to interact with residents of the State of New Jersey.

6.     In particular, Defendant has consciously, purposefully, and intentionally availed itself of regularly doing business in the State of New Jersey through Defendant's interactive web sites, including but not limited to www.vikingrivercruises.com and/or www.vikingcruises.com,  which Internet web sites were specifically set up by Defendant for such purpose,  and which Internet web sites were and have been fully operational in New Jersey at all times material hereto, and which Internet web sites were utilized by the Plaintiff in making Plaintiff's decision to purchase a vacation cruise aboard Defendant's vessel "Viking Jarl."

7.     At all times material hereto, as set forth above, Defendant has directed substantial electronic marketing activity into the State of New Jersey, via television and radio, with the manifested intent of engaging in the business of advertising, marketing, and selling vacation cruises to citizens of New Jersey, and

3

such intentional electronic activity by the Defendant has, with respect to Plaintiff and other citizens of New Jersey, created a potential cause of action cognizable in the courts of New Jersey.

8. At all times material hereto, as set forth above, Defendant has regularly and on a large scale used the mails of the United States and other means of interstate commerce directed to residents of the State of New Jersey, with the manifested intent of engaging in the business of advertising, marketing, and selling vacation cruises to citizens of New Jersey in the form of brochures, letters, and other promotional materials, and such intentional activity by the Defendant has, with respect to Plaintiff and other citizens of New Jersey, created a potential cause of action cognizable in the courts of New Jersey.

9. At all times material hereto, as set forth above, Defendant has directed electronic activity into the State of New Jersey (including but not limited to Internet, e-mail, and telephonic activity), with the manifested intent of engaging in the business of selling vacation cruises to citizens of New Jersey, and such intentional electronic activity by the Defendant has, with respect to Plaintiff and other citizens of New Jersey, created a potential cause of action cognizable in the courts of New Jersey.

10. Moreover, at all times material hereto, in addition to Defendant's

4

interactive Internet web sites referenced above, Defendant has previously entered into contractual relationships with numerous travel agents located throughout the State of New Jersey to advertise, market and sell Defendant's cruise vacations to residents of the State of New Jersey, including but not limited to:

a.   AAA of South Jersey, which  advertises, markets and sells tickets for Defendant's cruise vacations to residents of the State of New Jersey, and which lists Defendant Viking Cruise Lines as a "Preferred Cruise Partner;"

b.   Liberty Travel, which advertises, markets and sells tickets for Defendant's cruise vacations to residents of the State of New Jersey at its locations in New Jersey including Clifton, River Edge, East Brunswick, Wayne, Paramus, Livingston, and Morristown; and

c.   Byram Travel, which advertises, markets and sells tickets for Defendant's cruise vacations to residents of the State of New Jersey at its location in Stanhope, New Jersey.

11.   Plaintiff's cause of action for negligence hereunder is related to or arises out of Defendant's contacts with the State of New Jersey as set forth above.

12.   Defendant's continuous and systematic contacts with the State of New Jersey and its residents as set forth above are sufficient to confer  upon the

courts of New Jersey personal jurisdiction over the Defendant, the exercise of which would comport with traditional notions of fair play and substantial justice.

## II.    Jurisdiction and Venue

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity of citizenship exists between the parties. In the event this matter does not come under diversity jurisdiction of the Court, the Plaintiff shall proceed under admiralty jurisdiction.

14.    Defendant VIKING RIVER CRUISES, INC. is a California corporation with its principal place of business in the State of California. As set forth above, at all times material hereto, Defendant has sufficient minimum contacts with the State of New Jersey, or otherwise intentionally availed itself of the consumer markets of the State of New Jersey to render the exercise of jurisdiction by New Jersey courts over Defendant permissible under traditional notions of fair play and substantial justice. Venue is proper in this District pursuant to 28 U. S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial District.

15.    The cause of action asserted in this Complaint arise under the General

6

Maritime laws of the United States of America.

### III.   The "Passage to Eastern Europe" Cruise

16.    At all times material hereto, Defendant owned, operated, and/or controlled the vessel "Viking Jarl."

17.    On or about November 22, 2014, after offer therefor and acceptance by the Plaintiff through the Defendant's interactive Internet web sites, the Plaintiff booked and paid for a cruise on one of Defendant's heavily-marketed Eastern European cruises on Defendant's vessel, the "Viking Jarl," on Defendant's 2015 "Passage to Eastern Europe" cruise vacation through Sam Davidson, who was acting in such instance as the ticket agent and booking agent for Defendant for such cruise.

18.    Shortly after the date when the Plaintiff had booked and paid for her Eastern European cruise with Defendant's reservation and booking agent set forth in the preceding paragraph, Defendant mailed, *via* Internet e-mail, a reservation confirmation and itinerary to the Plaintiff, neither of which included any writing limiting the liability of the Defendant (including setting forth a shorter statute of limitations) or specifying an exclusive forum for claims against the Defendant, nor did such reservation confirmation or itinerary set forth any warning of the

7

inclusion in such contract of any additional contract terms which might limit the liability of the Defendant (including setting forth a shorter statute of limitations for filing a lawsuit) or which might specify an exclusive forum for making claims against the Defendant in connection with such cruise.

19.    Because Defendant's booking and reservation agent provided the Plaintiff with the written reservation confirmation and itinerary for the Plaintiff's cruise as set forth above, and because the Plaintiff had paid in full in advance for such cruise, there was sufficient agreement at such time between the Plaintiff and the Defendant's reservation and booking agent on Defendant's behalf to create an enforceable contract.

20.    On or about April 2, 2015, more than four (4) months after the Plaintiff had booked and paid for her cruise vacation on Defendant's vessel, and shortly before the date of the Plaintiff's departure to begin her Eastern European cruise on Defendant's vessel, the Plaintiff received her ticket for Defendant's "Passage to Eastern Europe" cruise (hereinafter, the "Quint Ticket").

21.    The Quint Ticket did not include any writing limiting the liability of the Defendant, including any writing setting forth a shortened statute of limitations for filing suit against the Defendant arising therefrom.

22.    The Quint Ticket did not include any written warning that a contract

8

term limiting the liability of the Defendant (including a contract term specifying a shorter statute of limitations for filing suit against the Defendant) set forth elsewhere would be incorporated into such ticket contract.

23.     At all times material hereto, Plaintiff had no notice that the Quint Ticket contract incorporated a contract term limiting the liability of the Defendant (including a contract term specifying a shorter statute of limitations for filing suit against the Defendant) into such ticket contract.

24.     The Quint Ticket did not include any writing specifying an exclusive or specifying an exclusive forum for claims to be made against the Defendant arising therefrom.

25.     The Quint Ticket did not include any written warning that a contract term specifying an exclusive forum for claims to be made against the Defendant arising therefrom would be incorporated into such ticket contract.

26.     At all times material hereto, Plaintiff had no notice that the Quint Ticket contract incorporated a contract term specifying an exclusive forum for claims to be made against the Defendant arising therefrom would be incorporated into such ticket contract.

27.     The Plaintiff never adopted or ratified any writing which purportedly limited the liability of the Defendant for such cruise, including but not limited to

any writing setting forth a provision specifying a shortened statute of limitations period for bring a lawsuit against the Defendant.

28.    The Plaintiff never adopted or ratified any writing which purportedly specified an exclusive  forum for claims made against the Defendant.

29.    No limitation of liability provision (or provision setting forth a shorter statute of limitations) or.exclusive forum selection clause was ever accepted by the Plaintiff as part of Plaintiff's contract with the Defendant for Plaintiff's Eastern European cruise on Defendant's vessel, the "Viking Jarl."

30.    Once payment in full in advance by the Plaintiff for such cruise had been accepted on Defendant's behalf by Defendant's booking and reservation agent in November, 2014,  Defendant provided Plaintiff with a confirmed reservation and itinerary which did not include any writing which limited the  liability of the Defendant for such cruise, including  any writing setting forth a provision specifying a shortened statute of limitations period for bring a lawsuit against the Defendant, and so therefore, such limitation of liability provision was not a part of the contract entered into between the Plaintiff and Defendant's ticketing and booking agent for Plaintiff's cruise.

31.    Once payment in full in advance by the Plaintiff for such cruise had been accepted on Defendant's behalf by Defendant's booking and reservation

agent in November, 2014, Defendant provided Plaintiff with a confirmed

reservation and itinerary which did not include any writing which set forth an

exclusive forum for claims made against the Defendant,  and so therefore, such

exclusive forum clause did not form a part of the contract entered into between the

Plaintiff and Defendant's ticketing and booking agent for Plaintiff's cruise.

### Plaintiff is injured on cruise due to Defendants Negligence

32.     On or about April 22, 2015, Plaintiff was a paying customer on the

*Viking Jarl* which was in navigable waters.

33.     At all times material hereto, Defendant owed the Plaintiff a duty to

provide Plaintiff with reasonable or ordinary care under the circumstances.

34.     In the evening of April 22, 2015, at about 6:30 p.m. Serbia time,

while the Plaintiff was waiting for dinner in the dining room of  the vessel "Viking

Jarl" during specified dining hours, Plaintiff started  walking away from her table

in such dining room  when Plaintiff suddenly slipped and fell, and severely injured

her knee, on some spilt food  on the terrazzo tile floor in an area of the dining

room located  nearest to the main food table from which the ship's staff were

assembling plates of food to be served to passengers.

35.     Immediately following her fall, Plaintiff noticed that what appeared to

be a piece of wet salad greens was attached to the bottom of her shoe, which was

the cause of Plaintiff's foot to slip out from under the Plaintiff, resulting in Plaintiff severely injuring Plaintiff's right knee.

36.    At the time the Plaintiff slipped and fell on the piece of wet salad greens as set forth above,  the dining room of the vessel "Viking Jarl," particularly the area near the main food table, was full of ship's employees who were carrying trays of food to and from the ship's kitchen, as well as carrying plates of food to be served to the ship's passengers.

37.    The dining room of the vessel "Viking Jarl," particularly the area near the main food table, which the ship's crew would be traversing while serving meals to the ship's passengers, was a high-traffic area which would  require the constant attention of the staff of the dining room to mop up or clean up any spills of food or liquids on the floor near the main food table made by the ship's crew while serving the ship's passengers to ensure the safety  of passengers walking to or from, or through such area or while the ship's crew was assembling plates of food to be served to the ship's passengers.

38.    In particular, Defendant owed the Plaintiff a duty to provide Plaintiff with reasonable or ordinary care by assigning staff to constantly monitor the floor around the main food table in the dining room to ensure that any food or liquid spilled on the floor by the ship's crew while serving meals to the ship's passengers

12

would be promptly addressed and cleaned up, to prevent passengers from slipping and falling on any such spilt food or liquid.

39.     The plaintiff is informed and believes, and upon such information and belief alleges, that Defendant did not regularly assign a crew member to constantly monitor the floor around the main food table in the dining room to ensure that any food or liquid spilled on the floor by the ship's crew while the crew was serving meals to the ship's passengers would be promptly addressed and cleaned up, so as to prevent passengers from slipping and falling on any such spilt food or liquid.

40.     The plaintiff is informed and believes, and upon such information and belief alleges, that, as an "economy" measure to reduce Defendant's labor and staffing costs and expenses,  Defendant intentionally did not assign a crew member of the "Viking Jarl" to constantly monitor the floor around the main food table in the dining room during mealtime on the 2015 "Passage to Eastern Europe" cruise to ensure the prompt cleanup of any food or liquid spilled on the floor by the ship's crew while the crew was serving meals, irrespective of the increased risk of slip and fall injuries to the ship's passengers created by and resulting from Defendant's adoption of such "economy" measure.

13

## COUNT I - NEGLIGENCE

41.    Plaintiff realleges, adopts, and incorporates by reference the allegations set forth in paragraphs 1 through 38 above as though fully alleged herein.

42.    It was the duty of Defendant to provide Plaintiff with reasonable or ordinary care under the circumstances.

43.    It was the duty of Defendant to provide Plaintiff with reasonable or ordinary care under the circumstances by keeping the terrazzo tile floor around the main food table in the dining room of the "Viking Jarl" clean and free of all spilt food and/or liquids at all times while passengers were dining or otherwise present in such dining room.

44.    On or about April 22, 2015, Defendant, and/or its agents, servants, joint venturers, and or employees breached its/their duty to provide Plaintiff with reasonable care under the circumstances.

45.    In particular, on or about April 22, 2015, Defendant, and/or its agents, servants, joint venturers, and or employees breached its/their duty to provide Plaintiff with reasonable care under the circumstances by, *inter alia*, failing to provide a safe place for the Plaintiff to eat her dinner due to Defendant's failure to keep the terrazzo tile floor around the main food table in the dining room of the

14

"Viking Jarl" clean and free of all spilt food and/or liquids at all times while

passengers, including but not limited to the Plaintiff, were dining or otherwise

present in such dining room.

46.    Plaintiff was injured due to the fault and/or negligence of Defendant

and/or its agents, servants, joint venturers, and or employees as follows:

a.    failing to provide a safe, clean  dining room of the "Viking Jarl" in

which passengers, including but not limited to the Plaintiff, could eat

their meals in safety as specified in Plaintiff's ticket, including

constantly monitoring the terrazzo tile floors around the main food

table of such dining room  to ensure passenger safety by keeping such

floors clean, free and clear of any and all spilt food and/or liquids

which might otherwise cause a passenger to slip and fall on such spilt

food and/or liquids;

b.    failing to provide a safe way for passengers to walk to, from, or by

the main food table in the dining room of the "Viking Jarl;"

c.    failing to regularly inspect the area around and near the main food

table in the dining room of the "Viking Jarl" to ensure that the

terrazzo tile floor near and around the main food table in the dining

room of the "Viking Jarl" was kept free and clear of any spilt food or

15

liquids at all times when passengers were dining or otherwise present in such dining room, and to promptly clean up any spilt food and/or liquid thereon to protect passengers from slipping and falling on such spilt food and/or water;

d.    failing to promptly clean up spilt food and/or liquids in such a high-traffic area as that near the main food table in the dining room of the "Viking Jarl;"

e.    failing to keep the terrazzo tile floor near and around the main food table in the dining room of the "Viking Jarl" free and clear of any spilt food or liquids;

f.    failing to assign staff to constantly monitor the high-traffic area around and near the main food table in the dining room of the "Viking Jarl" to ensure that such floor was kept free and clear of any and all spilt food and/or liquids at all times when passengers were dining or otherwise present in such dining room;

g.    failing to train staff to constantly monitor the high-traffic area around and near the main food table in the dining room of the "Viking Jarl" to ensure that such floor was kept free and clear of any and all spilt food and/or liquids at all times when passengers were dining or

16

otherwise present in such dining room;

h.    failing to engage and hire properly trained persons to supervise the ship's staff charged with the responsibility to constantly monitor the high-traffic area around and near the main food table in the dining room of the "Viking Jarl" to ensure that such floor was kept free and clear of any and all spilt food and/or liquids at all times when passengers were dining or otherwise present in such dining room;

i.    failing to supervise ship's staff charged with the responsibility to constantly monitor the high-traffic area around and near the main food table in the dining room of the "Viking Jarl" to ensure that such floor was kept free and clear of any and all spilt food and/or liquids at all times when passengers were dining or otherwise present in such dining room;

j.    failing to provide appropriate equipment and tools needed by the ship's staff  to ensure that the high-traffic area around and near the main food table in the dining room of the "Viking Jarl" was kept free and clear of any and all spilt food and/or liquids at all times when passengers were dining or otherwise present in such dining room;

k.    failing to provide prompt and proper emergency medical care and

17

assistance to the Plaintiff at the time the Plaintiff was injured; and/or

l.     failing to provide proper medical care on a timely basis subsequent to the Plaintiff being injured; and/or

m.    failing to provide adequate and appropriate assistance to the Plaintiff after the Plaintiff was injured due to the Defendant's negligence as set forth herein;

n.     failing to promulgate and/or enforce adequate and appropriate policies and procedures so as to provide the Plaintiff with the medical care and assistance and other needed assistance after the Plaintiff was injured due to the Defendant's negligence as set forth herein;

o.     failing to employ a staff member who was trained and experienced in emergency management, including but not limited to emergency medical management, on the 2015 "Passage to Eastern Europe" cruise;

p.     failing to employ a staff member who was trained and competent to assist passengers process medical insurance claim documentation with the insurance carrier which Defendant and Plaintiff had both contracted with to supply medical insurance coverage on such cruise;

q.     failing to take reasonable steps to identify and engage, in advance,

sources of qualified medical care and treatment which might be

needed for the ship's passengers at each of the ports of call during the

2015 "Passage to Eastern Europe" cruise;

r.     failing to take reasonable steps to identify and engage, in advance,

reliable sources of transportation which might be needed for the

ship's passengers for medical care and treatment at each of the ports

of call during the 2015 "Passage to Eastern Europe" cruise;

all of which caused the plaintiff to be injured and damaged, and/or which

increased the Plaintiff's pain, discomfort, mental distress, and anguish, after the

Plaintiff, during regular dining hours, slipped and fell while walking near and by

the main food table in the dining room of the "Viking Jarl" on spilt food and/or

liquids which had not been cleaned up by the ship's staff in a reasonable and

timely manner, which failure directly caused and resulted in the Plaintiff suffering

serious injury.

47.     At all times material hereto, Defendant had exclusive custody and
control of the vessel, "Viking Jarl."

48.     At all times material hereto, Defendant had exclusive custody and
control of the operations of the vessel, "Viking Jarl."

49.     At all times material hereto, Defendant was fully aware that

19

passengers could be seriously injured if dangerous conditions in high-traffic areas, including but not limited to situations involving spilt food and/or liquids on the terrazzo tile floor near the main food table of the ship's dining room, were not constantly monitored by ship's staff specifically assigned to the duty of cleaning up or otherwise remediating such hazardous condition.

50.     Defendant and its employees were fully aware of the hazardous condition existing on April 22, 2015 involving spilt food and/or liquids on the terrazzo tile floor near the main food table of the ship's dining room, or in the exercise of reasonable care or ordinary care, would have been made aware of the existence of such hazardous conditions.

51.     Defendant was aware of the foregoing hazardous conditions causing Plaintiff's accident and did not correct them, or the hazardous conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances should have learned of the existence of such hazardous conditions and corrected and remediated them.

52.     As a direct and proximate result of the negligence of defendant VIKING RIVER CRUISES, INC., as set forth herein, the Plaintiff was injured about the Plaintiff's body, right knee, and extremities, and Plaintiff suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement,

post traumatic stress disorder and other mental or nervous disorders, and Plaintiff

has incurred medical expenses in the care and treatment of Plaintiff's injuries so

suffered, and Plaintiff has suffered physical handicap, lost earnings, and lost

earning capacity, both present and future, in an amount in excess of $250,000.00

which Plaintiff expects to prove with certainty at trial.  Plaintiff's injuries caused

by Defendant's negligence as set forth herein are permanent or continuing in

nature, and Plaintiff will suffer losses and impairments in the future.  In addition,

Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.


## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff CYNTHIA  QUINT demands judgment for all

damages recoverable under law against defendant VIKING RIVER CRUISES,

INC..  Plaintiff further demands trial by jury.

**Dated**:        March 17, 2016.

GERARD  HANLON
NJ Bar No. 002771973

ATTORNEY FOR PLAINTIFF
CYNTHIA QUINT

21

HANLON DUNN ROBERTSON SCHWARTZ
33 Market Street
Morristown, New Jersey 07960
Tel: (973) 267-8895

**UNITED STATES DISTRICT COURT**

## DISTRICT OF NEW JERSEY
## DIVISION OF TRENTON

| | |
|---|---|
| **CYNTHIA QUINT**, | ) |
| | )    CASE NO. _____ |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **VIKING RIVER CRUISES, INC.**, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## VERIFICATION OF CYNTHIA QUINT

COMES NOW, CYNTHIA QUINT, plaintiff in the above-styled lawsuit, and, after being sworn, does hereby state, declare, and allege the following, in lieu of an affidavit or verification, pursuant to 28 U.S.C. § 1746:

1.     My name is Cynthia Quint. I am over the age of 21 and am otherwise competent. I have personal knowledge of each and every one of the factual allegations set forth in my attached and foregoing Complaint against Viking River Cruises, Inc., except where I specifically state otherwise.

2.     I have carefully read all of the statements of fact set forth in my attached and foregoing Complaint, and I declare under penalty of perjury that each of the foregoing is true and correct.

23

**Dated**:     March _10_, 2017,

CYNTHIA QUINT (date)
Plaintiff

24