GERARD HANLON
HANLON DUNN ROBERTSON SCHWARTZ
33 Market Street
Morristown, New Jersey 07960
Tel:   (973) 267-8895
ATTORNEY FOR PLAINTIFF CYNTHIA QUINT

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## DIVISION OF NEWARK

| | |
|---|---|
| **CYNTHIA QUINT,** ) | CASE NO. 2:17-cv-01865-CCC-SCM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **VIKING RIVER CRUISES, INC.,** ) | |
| a/k/a **"VIKING CRUISES,"** ) | |
| **VIKING RIVER CRUISES** ) | |
| **(INTERNATIONAL) LLC,** ) | |
| **VIKING RIVER TOURS, LTD,** ) | |
| **JOHN DOE INSURANCE** ) | |
| **COMPANY,** and ) | |
| **JOHN DOES 1 and 2,** ) | |
| ) **VERIFIED AMENDED COMPLAINT** | |
| ) **AND DEMAND FOR JURY TRIAL** | |
| Defendant. ) | |
| ) | |

COMES NOW, plaintiff **CYNTHIA QUINT** ("Plaintiff") in the above-

styled matter, and by and through her undersigned counsel of record, pursuant to

Fed. R. Civ. P. 15(a)(1)(B), files and serves this her Verified Amended Complaint

against defendants **VIKING RIVER CRUISES, INC.,** a/k/a "Viking Cruises"
("VRC" or "Defendant VRC"), **VIKING RIVER CRUISES
(INTERNATIONAL) LLC.** ("VRIC" or "Defendant VRIC"), **VIKING RIVER
TOURS, LTD** ("VRT" or "Defendant VRT"), **JOHN DOE INSURANCE
COMPANY,** and **JOHN DOES 1** and **2** ( except for Defendant John Doe
Insurance company, all other Defendants named herein are collectively referred tp
as "Defendants").

## Introduction

1.     As set forth herein, the failure of the Defendants to correct and/or
replace the defective, sub-standard terrazzo tile floor of the restaurant of the cruise
ship *Viking Jarl* known by Defendants VRC, VRIC, and VRT and the other
Defendants to be unreasonably slippery and dangerous to passengers, was a defect
in such ship which proximately caused Plaintiff Cynthia Quint's ("Plaintiff") to
slip and fall and suffer serious and permanent injuries in the course of a cruise
which took place entirely outside of U.S. waters.

2.     Plaintiff's slip and fall on the *Viking Jarl*, and her resulting serious
and permanent injuries, constitutes a "shipping incident" under applicable
international law and regulations, for which injury Defendants are strictly liable,
and the Plaintiff is entitled to recover compensatory damages as well as punitive

2

damages therefor from Defendants VRC, VRIC, and VRT and the other

Defendants pursuant to the New Jersey Punitive Damages Act, N. J. S. A.

2A:15-5.9 *et seq.*.   Count IV herein is Plaintiff's specific request for punitive

damages hereunder.

3.     Plaintiff's Amended Complaint herein provides details of the

reckless, unreasonably dangerous, willful and wanton misconduct of Defendants

VRC, VRIC, and VRT in connection with failure of such Defendants to correct

and/or replace the defective, non-slip resistant terrazzo tile floor in the restaurant

of the cruise ship *Viking Jarl*, so that such flooring was in compliance with

industry safety standards for high-traffic areas of cruise ships, which defective

condition in the *Viking Jarl was* known by such Defendants to be unreasonably

dangerous and to be a "hot spot" for passenger slip and fall accidents.

4.     In the case of the Plaintiff herein, the latent defect inherent in the

continued use by Defendants of a sub-standard, unreasonably slippery and

dangerous terrazzo tile floor in the restaurant of the *Viking Jarl* known by the

Defendants to be unreasonably dangerous and unsafe for passengers and likely to

result in passenger injuries is a "shipping incident" as defined by the 2002

Protocol to the Athens Convention, where such defect was the proximate cause of

Plaintiff's slip and fall accident and resulting serious and permanent bodily

3

injuries.

     5.    As set forth herein in more detail, at all times material hereto, Defendants VRC, VRIC,  and VRT's knowing use of defective and sub- industry standard, ***non-slip resistant*** flooring in the *Viking Jarl's* restaurant was compounded and multiplied by Viking's failure to make and enforce ship policies designed to remediate any foreign substances on such floor that would increase and compound even further the already too-high risk of passenger  slip and fall injuries thereon.

     6.    As set forth herein, Defendants VRC, VRIC, and VRT, and the other Defendants,  had actual knowledge  of:

    (1)  prior passenger injury history and experience on the defective, sub-standard, unreasonably dangerous  terrazzo tile flooring used in the restaurant of the *Viking Jarl*;

    (2) industry safety standards mandating slip-resistant flooring having a high coefficient of friction (COF), ***measured when wet;*** and

    (3),  actual knowledge that the restaurant floor of such vessel did not met industry safety standards, and that such flooring was on a daily basis repeatedly contaminated by moisture and/or foreign substances, resulting in dangerous "hot spots" for passenger slips and falls.

4

7.    Notwithstanding the actual knowledge of Defendants VRC, VRIC, and VRT and the other Defendants of the foregoing, such Defendants, acting in concert and as alter egos of each other, knowingly and recklessly, in willful and wanton disregard for passenger safety:

(a),    failed and refused to remove the defective, dangerously slippery terrazzo tile floor in the restaurant of the *Viking Jarl*, and replace such unreasonably unsafe flooring with a flooring that met or surpassed industry-recognized standards, particularly flooring which met or surpassed industry standards for an acceptable coefficient of friction *when such flooring was wet*;

(b)    failed and refused to adopt industry-standard policies and procedures, including but not limited to the formation of an effective "ship safety committee" staffed with qualified individuals authorized and empowered to adopt and enforce all industry-standard safety measures designed, *inter alia*, to reduce or eliminate to the extent possible the risk of "slip and fall" injuries in the restaurant and elsewhere on the *Viking Jarl*; and

( c)    failed and refused to take necessary steps to hire, train, and employ sufficient numbers of qualified and competent staff to consistently

monitor and inspect the floor in the restaurant of the *Viking Jarl* at all times while passengers were present therein, and to perform or to direct the performance of any and all tasks or actions necessary or desirable to minimize or eliminate to the extent possible the risk of "slip and fall" injuries in the restaurant of the *Viking Jarl.*

8.     The negligent acts and omissions by Defendants VRC, VRIC, and VRT and the other Defendants as set forth above and herein, which proximately caused Plaintiff's injuries, were accompanied by such Defendants' wanton and willful disregard for the safety of its passengers on the *Viking Jarl*, including the Plaintiff, who foreseeably would likely be harmed by those same negligent acts or omissions, and the Plaintiff is therefore entitled to recover compensatory damages from such Defendants as well as punitive damages pursuant to the New Jersey Punitive Damages Act, N. J. S. A. 2A:15-5.9.

### III.    PARTIES

9.     Plaintiff is a citizen of the State of New Jersey who is over the age of 18 and who resides in this District.

10.     Defendant VIKING RIVER CRUISES, INC., a/k/a "Viking Cruises," ("VRC") is a corporation organized under the laws of the State of California, with

its headquarters and principal place of business located at 5700 Canoga Ave. Suite 200, Woodland Hills, CA 91367. Defendant VRC trades as "Viking Cruises", "Viking", as well as under numerous other names.

11.    Defendant VIKING RIVER CRUISES (INTERNATIONAL) LLC. ("VRIC") is a corporation organized under the laws of the State of Delaware, with its headquarters and principal place of business located at 3500 South Du Pont Highway, Dover, Delaware 19901. Defendant VRIC also trades in the cruise market under the same names as Defendant VRC, including as "Viking Cruises", "Viking", as well as under numerous other similar names.

12.    The use in the cruise market by both Defendant VRC and Defendant VRIC of the names "Viking Cruises", "Viking", as well as under numerous other similar names causes confusion in the marketplace as to whether a person purchasing a cruise vacation is entering into a contract with Defendant VRC or Defendant VRIC.

13.    Defendant VIKING RIVER TOURS, LTD ("VRT") is a corporation incorporated in Bermuda with its principal place of business located in Hamilton, Bermuda. VRT may be served with process by service upon its Registered Agent, Conyers, Dill & Pearman, Clarendon house, 2 Church Street, Hamilton, Bermuda HM CX Bermuda.

7

14.    On information and belief, and therefore asserted, Defendants VRC, VRIC, and VRT are corporate "alter-egos" of each other, with common or overlapping ownership of each such corporate entity, where the owners of all such entities operate in concert, of a single management structure, and such Defendants intentionally used the same trade names in their marketing, promotional, and sales literature to confuse and mislead the public in general, and did in fact confuse and mislead the Plaintiff in this case by:

(a),    confusing and/or concealing the true identity of the entity operating a particular cruise vessel;

(b)    confusing and/or concealing the true identity of the entity providing cruise services on a particular cruise; and

( c)    confusing and/or concealing the identity of the entity providing commercial services on a particular cruise.

15.    Defendant JOHN DOE INSURANCE COMPANY is a presently unidentified insurance company which provided the required liability insurance coverage to the carrier or prime carrier of the *Viking Jarl* cruise ship for the April, 2015 "Passage to Eastern Europe" cruise on which the Plaintiff was injured, as required by the 2002 Athens Protocol (effective April 23, 2014), which Regulation further allows for personal injury claims by passengers such as

8

Plaintiff to be made directly against such insurer(s) hereunder.

Accordingly, Defendant JOHN DOE INSURANCE COMPANY, in addition to any duty of indemnification it might owe to any Defendant for Plaintiff's claims herein, also owes a duty to Plaintiff to review and evaluate in good faith claims made directly to such insurance company by the Plaintiff hereunder.

16.    Defendant JOHN DOE NUMBER ONE is a presently unidentified owner of a cruise ship known as the *Viking Jarl* during the April, 2015 "Passage to Eastern Europe" cruise on which the Plaintiff was injured.

17.    Defendant JOHN DOE NUMBER TWO is a presently unidentified employer or employers of managers and operators of the cruise ship known as *Viking Jarl* during the April, 2015 "Passage to Eastern Europe" cruise on which the Plaintiff was injured.

18.    This Court has jurisdiction over this matter under 28 U. S. C. § 1332 on account of the complete diversity of citizenship between the Plaintiff and all the Defendants, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs

19.    Personal jurisdiction over the Defendants and each of them is claimed under New Jersey's Long Arm Statute, N.J. C. R..4:4-4 (2003).

9

20.    Personal jurisdiction and venue are proper in this Court as this is
the Court for the District in which the Plaintiff resides, which is specifically
identified as having such jurisdiction and venue by the Athens Convention 1974,
and the Athens Protocol 2002 thereto (effective April 23, 2014), and EU
Regulation 392/2009 ("PLR"), effective April 23, 2009), which apply to Plaintiff's
cruise ship cause of action which arose in the territorial waters of the country of
Bulgaria, of the European Union.

21.    More specifically, personal jurisdiction and venue are proper in this
Court as this is the Court for the District in which the Plaintiff resides, which is
awarded jurisdiction and venue by the "PLR"s incorporation of EC Regulation
44/2001 (the "Brussels Regulation" - on Jurisdiction and the Recognition and
Enforcement of Judgments), including provisions thereof as being applicable to
Plaintiff's cruise ship cause of action which arose in the territorial waters of the
country of Bulgaria, of the European Union.

III.    **RELEVANT  FACTS**.

22.    On or about April 19, 2015, in the river port of Bucharest, Romania (a
member of the European Union), Plaintiff embarked on Defendant VRC's
"Passage to Eastern Europe" cruise on the Danube River, on the cruise ship *Viking*

10

*Jarl*, which cruise was scheduled to terminate in Budapest, Hungary, on or about April 28, 2015.

### The Athens Convention and "PLR"

23.    In the course of the April, 2015 "Passage to Eastern Europe," the *Viking Jarl* cruise ship did not depart from, disembark at, or stop at any U.S. port during such cruise.

24.    On or about April 22, 2015, Plaintiff, a paying customer  aboard the *Viking Jarl,* was injured while on the April, 2015 "Passage to Eastern Europe" cruise, at a time when the *Viking Jarl* cruise ship was physically located in navigable waters of the country of Bulgaria, a member of the European Union.

25.    Because the April, 2015 "Passage to Eastern Europe" cruise on which the Plaintiff was injured departed from and terminated at European ports without any contact with a U.S. port: (1), the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea, Dec. 13, 1974, U. N. T. S. 19; (2),  the  Athens Protocol 2002 (effective April 23, 2014);  and (3),  EU Regulation 392/2009 ("PLR", effective April 23, 2009), each apply fully to Plaintiff's claims for recovery of damages thereunder in all material respects.

26.    The "PLR" specifically incorporates by reference EC Regulation 44/2001 ( the "Brussels Regulation" - on Jurisdiction and the Recognition and

11

Enforcement of Judgments), including provisions thereof specifying that the home State of an injured consumer shall have jurisdiction over claims made for personal injuries sustained by such consumer in intra-Europe cruises.

27.    The "PLR" specifically provides that any cruise carrier's contractual provision which conflicts with the Athens Convention and/or the 2002 Protocol and/or EU Regulation 392/2009, including any contractual provision attempting to reduce or limit the liability of the cruise carrier or prescribing lower liability limits, is void and invalid.

28.    The "PLR" defines a 'shipping incident' as the shipwreck, capsizing, collision or stranding of the ship, explosion or fire in the ship, <u>or defect in the ship.</u>

29.    The "PLR" provides that if the death or personal injury is caused by a 'shipping incident', the carrier is **strictly liable** therefor unless the carrier proves that the incident: resulted from an act of war, hostilities, civil war, insurrection or a natural phenomenon of an exceptional, inevitable and irresistible character; or was wholly caused by an act or omission done with the intent to cause the incident by a third party.

30.    The defect in the *Viking Jarl* at issue in this lawsuit, namely the continued use by the Defendants of a non-slip resistant, sub-industry standard

12

flooring in the restaurant of such cruise ship known by Defendants to be unreasonably dangerous, was not the result of an act of war, hostilities, civil war, insurrection or a natural phenomenon of an exceptional, inevitable and irresistible character, nor was such defect of the *Viking Jarl* wholly caused by an act or omission done with the intent to cause the incident by a third party.

31.    In the case of the Plaintiff, the latent defect inherent in the continued use by Defendants of a sub-standard, unreasonably slippery and dangerous terrazzo tile floor in the restaurant of the *Viking Jarl* was a "shipping incident" which was the proximate cause of Plaintiff's slip and fall and resulting serious and permanent bodily injuries, for which the Defendants are liable or for which Defendants are strictly liable.

## Defendants Continuing Presence in New Jersey

32.    Defendants VRC, VRIC, VRT, and each of them, acting in concert, at all times material hereto, personally or through an agent(s):

a.    operated, conducted, engaged in, or carried on a business venture, through agents or otherwise, in this District in the State of New Jersey or had an office or agency in this District in the State of New Jersey;

b.    was engaged in substantial and not isolated business activity in this District in the State of New Jersey;

13

c.      as set forth in more detail herein, Defendants' actions and/or
omissions caused injury to the Plaintiff outside this state, while, at, or about the
time of such injury, Defendants  were engaged in solicitation of business within
this District in the State of New Jersey; and

d.      at all times material hereto, Defendants were engaged in the business
of providing to the public of New Jersey in general and to the Plaintiff in
particular, on a systematic and regular basis, for compensation, vacation cruises
aboard Defendant's cruise vessels.  Defendants are in possession of the Plaintiff's
ticket contract, a copy of which will be produced through discovery hereunder.

33.     At all times material hereto, Defendants, acting in concert,  have
operated interactive Internet web sites fully accessible to residents of the State of
New Jersey, and such Internet web sites are interactive to a degree that reveals
Defendants' specific intent to interact with residents of the State of New Jersey.

34.     In particular, Defendants, acting in concert,  have consciously,
purposefully, and intentionally availed themselves of regularly doing business in
the State of New Jersey through Defendants' interactive web sites, including but
not limited to www.vikingrivercruises.com and/or www.vikingcruises.com,  which
Internet web sites were specifically set up by Defendants for such purpose,  and
which Internet web sites were and have been fully operational in New Jersey at all

14

times material hereto, and which Internet web sites were utilized by the Plaintiff in making Plaintiff's decision to purchase a vacation cruise aboard Defendants' cruise vessel *Viking Jarl*.

35.   At all times material hereto, as set forth above, Defendants, acting in concert,   have directed substantial electronic marketing activity into the State of New Jersey, via television and radio, with the manifested intent of engaging in the business of advertising, marketing, and selling vacation cruises to citizens of New Jersey, and such intentional electronic activity by the Defendants have, with respect to Plaintiff and other citizens of New Jersey, created a potential cause of action cognizable in the courts of New Jersey.

36.   At all times material hereto, as set forth above, Defendants, acting in concert, have regularly and on a large scale used the mails of the United States and other means of interstate commerce directed to residents of the State of New Jersey, with the manifested intent of engaging in the business of advertising, marketing, and selling vacation cruises to citizens of New Jersey in the form of brochures, letters, and other promotional materials, and such intentional activity by the Defendants has, with respect to Plaintiff and other citizens of New Jersey, created a potential cause of action cognizable in the courts of New Jersey.

37.   At all times material hereto, as set forth above, Defendants, acting in

15

concert, have directed electronic activity into the State of New Jersey (including but not limited to Internet, e-mail, and telephonic activity), with the manifested intent of engaging in the business of selling vacation cruises to citizens of New Jersey, and such intentional electronic activity by the Defendants has, with respect to Plaintiff and other citizens of New Jersey, created a potential cause of action cognizable in the courts of New Jersey.

38.    Moreover, at all times material hereto, in addition to Defendants' interactive Internet web sites referenced above, Defendants, acting in concert, have had representatives regularly call upon travel agents located in New Jersey, conducted seminars for such travel agents which were held in New Jersey, and distributed brochures and other promotional materials in person in New Jersey to such travel agents.

39.    At all times material hereto, Defendants, acting in concert, have entered into contractual relationships with numerous travel agents located throughout the State of New Jersey to advertise, market and sell, and to receive commissions on such sales of Defendants' cruise vacations to residents of the State of New Jersey, including but not limited to:

      a.    AAA of South Jersey, which advertises, markets and sells tickets for Defendant's cruise vacations to residents of the State of New Jersey,

and which lists Defendants VRC and VRT Cruise Lines as a

"Preferred Cruise Partner;"

b.    Liberty Travel, which advertises, markets and sells tickets for

Defendant's cruise vacations to residents of the State of New Jersey

at its locations in New Jersey including Clifton, River Edge, East

Brunswick, Wayne, Paramus, Livingston, and Morristown; and

c.    Byram Travel, which advertises, markets and sells tickets for

Defendant's cruise vacations to residents of the State of New Jersey

at its location in Stanhope, New Jersey.

40.    Plaintiff's cause of action for negligence hereunder is related to or
arises out of Defendants' contacts with the State of New Jersey as set forth above.

41.    Defendants' continuous and systematic contacts with the State of
New Jersey and its residents as set forth above are sufficient to confer upon the
courts of New Jersey personal jurisdiction over the Defendants, the exercise of
which would comport with traditional notions of fair play and substantial justice.

**The Defendants are Alter-Egos with no Corporate Independence**

42.    If it is true, as alleged, Defendant VRC and/or Defendant VRIC,
acting in concert, were acting only as agents for the April, 2015 "Passage to
Eastern Europe" cruise, then Defendant VRT is the principal for whom they were

17

the agent(s).  Defendant VRT is therefor subject to the jurisdiction of this Court in

New Jersey pursuant to the New Jersey Long Arm Statute an/or  EC Regulation

44/2001, the "Brussels Regulation" - on Jurisdiction and the Recognition and

Enforcement of Judgments, made applicable to Plaintiff's European cruise ship

cause of action by the "PLR."

43.    The Viking ship logo, the word "Viking," and the phrase "Exploring

the World in Comfort," all of which are used regularly and systematically by

Defendants VRC, VRIC,  and VRIC in their prolific and massive advertising

programs and campaigns, are registered with the United States Patent and

Trademark Office by Defendant Viking River Cruises, LTD, of Hamilton,

Bermuda.

44.    At all times material hereto, Defendants VRC, VRIC, and VRT,

acting in concert,   owned, operated, and/or controlled the vessel "Viking Jarl."

**Plaintiff pays for April 2015 "Passage to Eastern Europe" cruise in 2014**

45.    On or about November 22, 2014, after offer therefor and

acceptance by the Plaintiff through the Defendants' interactive Internet web sites,

the Plaintiff booked and paid for a cruise on one of Defendants' heavily-marketed

Eastern European cruises on Defendants' vessel, the *Viking Jarl,* on Defendants'

2015 "Passage to Eastern Europe" cruise vacation through Sam Davidson, who

18

was acting in such instance as the ticket agent and booking agent for Defendants VRC, VRIC, and VRT for such cruise, and, on information and belief, Mr. Davidson received a commission from Defendants for such sale.

46.    Shortly after the date when the Plaintiff had booked and paid for her Eastern European cruise with Defendants' reservation and booking agent set forth in the preceding paragraph, Defendants sent, *via* Internet e-mail, a reservation confirmation and itinerary to the Plaintiff, neither of which included any writing limiting the  liability of any Defendant (including setting forth a shorter statute of limitations)  or specifying  an exclusive  forum for claims against any Defendant, nor did such reservation confirmation or itinerary set forth any warning of the inclusion in such contract of any additional contract terms which might limit the liability of any Defendants (including setting forth a shorter statute of limitations for filing a lawsuit)  or which might specify  an exclusive  forum for making claims against any Defendant in connection with such cruise.

47.    Because Defendants' booking and reservation agent provided the Plaintiff with the written reservation confirmation and itinerary for the Plaintiff's cruise as set forth above, and because the Plaintiff had paid in full in advance for such cruise, there was sufficient agreement at such time between the Plaintiff and the Defendants'  reservation and booking agent acting on Defendants' behalf to

create an enforceable contract.

48.     On or about April 2, 2015, more than four (4) months after
the Plaintiff had booked and paid for her cruise vacation on Defendants' vessel,
and shortly before the date of the Plaintiff's departure to begin her
Eastern European cruise on Defendants' vessel, the Plaintiff received her ticket for
Defendants' April, 2015 "Passage to Eastern Europe" cruise (hereinafter, the
"Quint Ticket").

### Quint Ticket Contains No Limitations of Liability

49.     The Quint Ticket did not include any writing limiting the liability of
any Defendant, including any writing setting forth a shortened statute of
limitations for filing suit against any Defendant arising therefrom.

50.     The Quint Ticket did not include any written warning that a contract
term limiting the liability of any Defendant (including a contract term specifying
a shorter statute of limitations for filing suit against any Defendant) set forth
elsewhere would be incorporated into such ticket contract.

51.     At all times material hereto, Plaintiff had no notice that the Quint
Ticket contract incorporated a contract term limiting the liability of any
Defendant (including a contract term specifying a shorter statute of limitations for
filing suit against any Defendant) into such ticket contract.

20

52.    The Quint Ticket did not include any writing specifying an exclusive or specific forum for claims to be made against any Defendant arising therefrom.

53.    The Quint Ticket did not include any written warning that a contract term specifying an exclusive forum for claims to be made against any Defendant arising therefrom would be incorporated into such ticket contract.

54.    At all times material hereto, Plaintiff had no notice that the Quint Ticket contract incorporated a contract term specifying an exclusive forum for claims to be made against any Defendant arising therefrom would be incorporated into such ticket contract.

55.    The Plaintiff never adopted or ratified any writing which purportedly limited the liability of any Defendant for such cruise, including but not limited to any writing setting forth a provision specifying a shortened statute of limitations period for bring a lawsuit against any Defendant.

56.    The Plaintiff never adopted or ratified any writing which purportedly specified an exclusive forum for claims made against any Defendant.

57.    No limitation of liability provision (or provision setting forth a shorter statute of limitations) or exclusive forum selection clause was ever accepted by the Plaintiff as part of Plaintiff's contract with the Defendants for Plaintiff's April, 2015 Eastern European cruise on Defendants' vessel, the *Viking*

21

*Jarl.*

58.    Once payment in full in advance by the Plaintiff for
such cruise had been accepted on Defendants' behalf by Defendants' booking and
reservation agent in November, 2014,  Defendants provided Plaintiff with a
confirmed reservation and itinerary which did not include any writing which
limited the  liability of any Defendant for such cruise, including  any writing
setting forth a provision specifying a shortened statute of limitations period for
bring a lawsuit against any Defendant, and so therefore, such limitation of liability
provision was not a part of the contract entered into between the Plaintiff and
Defendants' ticketing and booking agent for Plaintiff's cruise.

59.    Once payment in full in advance by the Plaintiff for such cruise had
been accepted on Defendants' behalf by Defendants' booking and reservation
agent in November, 2014, Defendants provided Plaintiff with a confirmed
reservation and itinerary which did not include any writing which set forth an
exclusive forum for claims made against any Defendant,  and so therefore, such
exclusive forum clause did not form a part of the contract entered into between the
Plaintiff and Defendants' ticketing and booking agent for Plaintiff's cruise.

### Athens Convention - Two Year Statute of Limitations

60.    The Athens Convention Relating to the Carriage of Passengers and

22

Their Luggage by Sea, Dec. 13, 1974, U. N. T. S. 19, and the Athens Protocol 2002 (effective April 23, 2014) and EU Regulation 392/2009 ("PLR", effective April 23, 2009), all of which apply fully which apply to Plaintiff's April, 2015 cruise ship cause of action arising in the territorial waters of the country of Bulgaria, of the European Union, mandate a two year statute of limitations for any passenger injury to be filed with the cruise carrier, starting from the date of the cruise passenger's disembarkation from the cruise ship in question.

### Plaintiff is injured on cruise due to Defendants Negligence

61.    On or about April 22, 2015, Plaintiff was a paying customer on the *Viking Jarl* which was in navigable waters of the country of Bulgaria, of the European Union.

62.    At all times material hereto, Defendants VRC, VRIC, and VRT, and each of them, and each of the other as yet identified defendants except John Doe Insurance Company, owed the Plaintiff a duty to provide Plaintiff with reasonable or ordinary care under the circumstances.

63.    In the evening of April 22, 2015, at about 6:30 p.m. European time, while the Plaintiff was waiting for dinner in the restaurant of the vessel *Viking Jarl* during specified dining hours, Plaintiff started walking away from her table in such restaurant when Plaintiff suddenly slipped and fell, and severely

injured her knee, on some spilt food or other foreign contamination on the terrazzo tile floor in an area of the restaurant of the *Viking Jarl* near to the main food table from which the ship's staff were assembling plates of food to be served to passengers.

64.    Immediately following her fall, Plaintiff noticed that what appeared to be a piece of wet salad greens was attached to the bottom of her shoe, which appeared to be the cause of Plaintiff's foot to slip out from under the Plaintiff, resulting in Plaintiff severely injuring Plaintiff's right knee.

65.    At the time the Plaintiff slipped and fell on the piece of wet salad greens as set forth above, the restaurant of the vessel *Viking Jarl,* particularly the area near the main food table, was full of ship's employees who were carrying trays of food to and from the ship's kitchen, as well as carrying plates of food to be served to the ship's passengers.

66.    The restaurant of the cruise vessel *Viking Jarl,* particularly the area near the main food table, which the ship's crew would be traversing while serving meals to the ship's passengers, was a high-traffic area which would require the constant attention of the staff of the dining room to mop up or clean up any spills of food or liquids on the floor near the main food table made by the ship's crew while serving the ship's passengers to ensure the safety of passengers walking to

24

or from, or through such area or while the ship's crew was assembling plates of food to be served to the ship's passengers.

67.   The section of terrazzo tile floor the Plaintiff stepped on was contaminated with moisture and a foreign substance that greatly reduced its normal coefficient of friction, making the surface extremely slippery.

68.    The foreign substance in question had been introduced by the Defendants' employees and/or had been there for a sufficient period of time so that the Defendants' employees, in the exercise of reasonable care, knew or should have known about it.

69.   Defendants VRC, VRIC, and VRT, and the other unidentified defendants besides the John Doe Insurance Company, at all times material hereto, owed the Plaintiff, as a fare-paying passenger aboard the subject cruise vessel, a non-delegable duty to exercise reasonable care under the circumstances for her safety.

70.   Alternatively, Defendants VRC, VRIC, and VRT and/or its/their employees, at all times material hereto, engaged in certain affirmative undertakings, as hereinafter alleged; and in doing so acquired a non-delegable duty to exercise reasonable care in those undertakings.

71.   Falls in general, upon information and belief and at all times material

hereto, are the leading cause of injuries of cruise ships in the U.S. in general, and aboard cruise vessels belonging to Defendants VRC, VRIC, and/or VRT' in particular. Defendants VRC , VRIC, and VRT, at all times material hereto, had actual knowledge of was aware of these statistics.

72.     Defendants VRC, VRIC, and VRT, upon information and belief, over the years, has received actual notice that hundreds if not thousands of its passengers and crew have slipped and fallen on the defective, non-slip resistant, sub-industry standard terrazzo tile floors used by Defendants for the flooring of their restaurants throughout their fleet of vessels, including but not limited to the cruise ship *Viking Jarl*.

73.     Defendants VRC, VRIC, and VRT, at all times material hereto, on information and belief, requires its/their crew to wear slip- resistant footwear at all times, but do not require its/their passengers to do so.

74.     Defendants VRC, VRIC, and VRT, at all times material hereto, had actual knowledge that the risk of such falls to its passengers on the cruise ship *Viking Jarl* is heightened because of a general lack of passenger familiarity with vessels and their appurtenances, and because Defendants actively market its/their cruises to persons who are disabled, mobility impaired or elderly (many of whom are gait-impaired), and sells copious amounts of alcohol aboard such cruise

26

vessels.

75.    Defendants VRC, VRIC, and VRT, at all times material hereto, consider the elderly and disabled as a "growth market," in large part because they are free to cruise at all times of the year, as opposed to being limited to vacations from work or school.

76.    Defendants VRC, VRIC, and VRT, acting in concert at all times material hereto, actively undertake through its/their advertising and other public information to encourage persons with disabilities and physical impairments affecting their mobility to book cruises with such Defendants, by actively touting special accommodations and medical services purportedly available for such individuals aboard its/their vessels.

77.    This advertising and promotion campaign directed at seniors and disabled persons by Defendants VRC, VRIC, and VRT reached the Plaintiff who, at all times material hereto, reasonably relied upon the Defendants' information in making her decision to book the subject cruise aboard the subject vessel.

78.    Defendants VRC, VRIC, and VRT, acting in concert at all times material hereto, undertake to comply with the published accessibility guidelines and recommendations of the U.S. Access Board by establishing and maintaining "accessible routes" on all its vessels, for the disabled and others with physical

27

impairments affecting their mobility.

79.    The accessible routes aboard the *Viking Jarl*, upon information and belief and at all times material hereto, include the terrazzo-tiled flooring running throughout the ship's restaurant referenced above.

80.    Alternatively, Defendants VRC, VRIC, and VRT, acting in concert at all times material hereto, had a duty, and undertook to comply with Regulation 13 of the international Safety of Life at Sea (SOLAS) treaty, that requires obstacle-free, safe escape routes to be provided throughout Defendants' vessels, including the *Viking Jarl*.

81.    The terrazzo-tiled flooring that run through the restaurant on the *Viking Jarl*, upon information and belief, is among the primary or secondary means of escape aboard the vessel.

82.    Defendants VRC, VRIC, and VRT, acting in concert at all times material hereto, chose to make the ship's restaurant of the *Viking Jarl* a full-service restaurant, in which food and drinks were provided solely by ship's staff.

83.    Defendants VRC, VRIC, and VRT, upon information and belief and at all times material hereto, had actual knowledge from prior experience on the *Viking Jarl* and its other vessels that restaurants were locations where the flooring would repeatedly, on a daily basis, become contaminated by moisture and/or

28

foreign substances, and that restaurants aboard Defendants' vessels were dangerous "hot spots" for passenger slips and falls, which often resulted in injuries.

84.    On information and belief, the lack of slip resistance, and the concomitant low coefficient of friction, of the terrazzo tile floor in the restaurant of the *Viking Jarl*, especially when such floor was wet or contaminated, was known by Defendants VRC, VRIC, and VRT, acting in concert, to violate:

(1),    the Defendants' own internal slip-resistance standards;

(2),    Regulation 13 of SOLAS ("Escape routes shall be maintained in a safe condition, clear of obstacles.");

(3),    §14 of the International Maritime Organization's "Recommendation on the Design and Operation of Passenger Ships to Respond to Elderly and Disabled Persons' Needs," MSC/Circ. 735 (24 June 1996)("decks and floors should...have slip resistant surface.");

(4),    §V302.1 ("Deck Surfaces") of the U.S. Access Board's, Draft Passenger Vessel Accessibility Guidelines (and the corresponding ADA Accessibility Guideline) ("Deck surfaces *shall be...slip resistant*."); and

(5),    §11.12.1.2 of the American Society for Testing and Materials

(ASTM)'s "Standard Practice for Human Engineering Design for
Marine Systems, Equipment, and Facilities," ASTM F-1166-07
("Walkways, passageways, decks, and all other walking surfaces shall
have a non-skid surface sufficient to provide a coefficient of friction
(COF) of 0.6 or higher *measured when the surface is wet*.").

85.    Defendants VRC, VRIC, and VRT, acting in concert at all times
material hereto, had actual knowledge of, or, in the exercise of reasonable care
should have known, that the materials and configurations Defendants specified,
created, used, and tolerated for the terrazzo tiled floor of the restaurant of the
*Viking Jarl*, were defined as unsafe and sub-standard in the referenced regulations,
standards, and guidelines referenced above.

86.    Defendants VRC, VRIC, and VRT, acting in concert at all times
relevant hereto, had actual knowledge of, or, in the exercise of reasonable care
should have known, that the actual unreasonably dangerous and non- slip-resistant
properties and configurations of the terrazzo tile flooring material utilized in the
restaurant of the *Viking Jarl*, at all times material hereto, was established by
and/or was under the direct control of such Defendants.

87.    Defendants VRC and VRT, acting in concert at all times material
hereto, had actual knowledge of, or, in the exercise of reasonable care should have

known, that the terrazzo-tiled flooring in the restaurant of the *Viking Jarl* where
the Plaintiff slipped and fell was unreasonably unsafe and unreasonably
dangerous, as such was ***not*** slip-resistant, and such Defendants knew such
defective flooring did not comply with applicable safety standards, regulations,
and guidelines including but not limited to those referenced herein.

88.    Defendants VRC, VRIC, and VRT, acting in concert at all times
relevant hereto, also had actual knowledge of, or, in the exercise of reasonable
care should have known, that its passengers aboard the *Viking Jarl* were slipping,
falling, and/or being injured at the subject location where the Plaintiff fell, and/or
in other comparable walking areas on its other vessels having similar defective
flooring.

89.    Defendants VRC, VRIC, and VRT, on information and belief,
however, has never undertaken a systematic inspection and evaluation of its
facilities (especially including the terrazzo-tiled flooring used in the restaurant of
the *Viking Jarl* ) to identify and remediate non-conformities with applicable safety
regulations, standards, and guidelines, including but not limited to those
referenced herein.

90.    At the time of the incident complained of herein, the subject terrazzo-
tiled flooring in the restaurant of the *Viking Jarl* had became contaminated by

31

moisture and/or foreign substances spilled or dropped by the actions of the Defendant's employees who were solely responsible for providing and serving food and beverages to passengers.

91. Defendants VRC, VRIC, and VRT, acting in concert at all times material hereto, had actual knowledge of, or, in the exercise of reasonable care should have known of the unreasonably unsafe and unreasonably dangerous condition of the wet and/or contaminated terrazzo-tiled flooring existing in the restaurant of the *Viking Jarl* at the time of the incident in question in this lawsuit.

92. Alternatively, Defendants VRC, VRIC, and VRT and/or its employees at all times material hereto undertook to maintain the floor surfaces in the restaurant of the *Viking Jarl* and/or to keep them clean and dry, and, as previously stated, thereby acquired a duty to exercise reasonable care in those undertakings.

93. At all times material hereto, Defendants VRC, VRIC, and VRT, acting in concert at all times material hereto, failed to comply with its own and/or industry standards designed to ensure the safety of its passengers by properly monitoring, inspecting, and maintaining the terrazzo-tiled flooring in the restaurant of the *Viking Jarl* to ensure the safety and well-being of passengers, including the Plaintiff.

94.    Defendants VRC, VRIC, and VRT, acting in concert at all times material hereto, breached its/their duty of care owed to the Plaintiff and other passengers by:

(1),    negligently utilizing, monitoring, inspecting, and maintaining, the aforementioned unreasonably unsafe, sub-standard, and unreasonably dangerous terrazzo-tiled flooring in the restaurant of the *Viking Jarl*;

(2),    negligently failing to take reasonable steps to become aware of the defective and substandard nature of such flooring;

(3),    negligently failing to properly assess and evaluate, in light of Defendants' duty to use reasonable care for the safety of its passengers, the appropriateness of using and /or continuing to use unreasonably slippery and unsafe, sub-standard, and unreasonably dangerous flooring materials in the restaurant of the *Viking Jarl*, known to be a "hot spot" for passenger slip and fall accidents;

(4),    negligently failing to correct the conditions in question;

(5),    negligently failing to warn its passengers of the dangerous conditions around the unreasonably slippery, sub-industry standard terrazzo tile flooring in the restaurant of the *Viking Jarl*; and

(6),    negligently failing to station an adequate crew to monitor the flooring

33

of the restaurant on the *Viking Jarl* to ensure that such was clean, dry and safe for passengers at all times while passengers were present, and/ or to ensure that such flooring was otherwise kept in full compliance with applicable safety regulations, standards, and guidelines, including but not limited to those referenced herein.

95.    As a direct and proximate result of the negligent acts and/or omissions of Defendants VRC, VRIC, and VRT's as set forth herein, the Plaintiff, while exercising reasonable care for her own safety, encountered the subject unreasonable unsafe conditions, including the defective flooring in the restaurant of the *Viking Jarl*, slipped, fell, and shattered her patella, requiring major surgery.

96.    The Plaintiff was further injured in and about her body and extremities, suffered and continues to suffer physical and mental pain, incurred and continues to incur medical expenses in the treatment of her injuries as set forth herein, has suffered and continues to suffer physical handicap. Plaintiff's injuries directly and proximately caused by the unreasonably negligent acts and/or omissions of Defendants acting in concert as set forth herein, are either permanent or continuing in nature and the Plaintiff will continue to suffer her pain, losses and impairments in the future.

97.    Defendants VRC, VRIC, and VRT, acting in concert,

34

owed the Plaintiff a duty to provide Plaintiff with reasonable or ordinary care by assigning staff to constantly monitor the floor around the main food table in the dining room to ensure that any food or liquid spilled on the floor by the ship's crew while serving meals to the ship's passengers would be promptly addressed and cleaned up, to prevent passengers from slipping and falling on any such spilt food or liquid.

98.    The Plaintiff is informed and believes, and upon such information and belief alleges, that Defendants did not regularly assign a crew member to constantly monitor the floor around the main food table in the dining room to ensure that any food or liquid spilled on the floor by the ship's crew while the crew was serving meals to the ship's passengers would be promptly addressed and cleaned up, so as to prevent passengers from slipping and falling on any such spilt food or liquid.

99.    The Plaintiff is informed and believes, and upon such information and belief alleges, that, as an "economy" measure to reduce Defendants' labor and staffing costs and expenses, Defendants intentionally failed and neglected to assign a crew member of the *Viking Jarl* to constantly monitor the floor around the main food table in the dining room during mealtime on the 2015 "Passage to Eastern Europe" cruise to ensure the prompt cleanup of any food or liquid spilled

35

on the floor by the ship's crew while the crew was serving meals, irrespective of the increased risk of slip and fall injuries to the ship's passengers created by and resulting from Defendants' adoption of such "economy" measure.

100.  The Plaintiff has satisfied all conditions-precedent to this lawsuit., including timely delivering to Defendants written notice of her claim.

## COUNT I - TORTIOUS CONDUCT

(Negligence and Inaction)

101.  Plaintiff realleges, adopts, and incorporates by reference the allegations set forth in paragraphs 1 through 100 above as though fully alleged herein.

102.  Defendants, acting in concert, owed Plaintiff a duty to exercise reasonable care under the circumstances. This duty included (a) a duty to warn passengers of an unreasonably dangerous condition of which Defendants were actually or constructively aware and (b) a duty to properly ensure that the *Viking Jarl* cruise vessel was kept and maintained in a reasonably safe condition.

103.  It was the duty of the Defendants, acting in concert, to provide Plaintiff with reasonable or ordinary care under the circumstances by keeping the terrazzo tile floor in the restaurant of the *Viking Jarl* clean, dry, and free of all

36

spilt food and/or liquids at all times while passengers were dining or otherwise present in such dining room.

104.   The terrazzo tile floors of the restaurant of the *Viking Jarl* cruise vessel, which were non- slip resistant and below industry safety standards for high-traffic passenger areas, constituted an unreasonably dangerous condition for passengers walking through such restaurant, including the Plaintiff.

105.   In light of Defendants VRC, Vric, and VRT's actual or constructive knowledge that the terrazzo- tiled flooring of the restaurant of the *Viking Jarl* was a "hot spot" for passenger slip and fall accidents, it was the duty of such Defendants, acting in concert, to provide Plaintiff with reasonable or ordinary care under the circumstances by ensuring that the flooring of such restaurant met or surpassed all applicable industry safety standards, including but not limited to using only flooring having a "safe" coefficient of friction (COF) *measured when such flooring was wet.*

106.   Defendants VRC, VRIC, and VRT, acting in concert, were in fact aware at all times material hereto that the defective, sub-industry standard, non-slip resistant terrazzo tile floor of the restaurant of the *Viking Jarl* cruise vessel had previously caused passengers to slip and fall, in some cases causing bodily injury.

37

107.    The unreasonably dangerous condition posed by the defective, sub-industry standard, non-slip resistant terrazzo tile used by Defendants for the floor of the restaurant of the *Viking Jarl* cruise vessel was not apparent, open, obvious, or readily determinable to or by the Plaintiff.

108.    It was reasonably forseeable that the use by Defendants of defective, sub-industry standard, non-slip resistant terrazzo tile flooring in a high-traffic area such as the restaurant of the *Viking Jarl* cruise vessel was likely to regularly become contaminated with foreign substances would cause injury.

109.    At all times material hereto, Defendants VRC, VRIC, and VRT, acting in concert, breached its/their duty of reasonable or ordinary care under the circumstances by failing to warn Plaintiff of the unreasonably dangerous condition posed to passengers by Defendants' continued use of defective, sub- industry standard, non-slip resistant terrazzo tile on the floor of a high-traffic area of the restaurant of the *Viking Jarl* cruise vessel.

110.    Plaintiff's injuries suffered in her slip and fall on the cruise ship *Viking Jarl* were proximately and directly caused by the fault and/or negligence of Defendants VRC, VRIC, and VRT and/or its agents, servants, joint venturers, and or employees, acting in concert, as follows:

a.      failure to employ a safe, industry-standard, slip-resistant flooring in

the restaurant of the *Viking Jarl,* having an acceptable coefficient of friction (COF)*, measured when such flooring was wet*;

b.    failing to provide a safe, clean dining room of the *Viking Jarl* in which passengers, including but not limited to the Plaintiff, could eat their meals in safety as specified in Plaintiff's ticket, including constantly monitoring the terrazzo tile floors around the main food table of such dining room to ensure passenger safety by keeping such floors clean, free and clear of any and all spilt food and/or liquids which might otherwise cause a passenger to slip and fall on such spilt food and/or liquids;

c.    failing to provide a safe way for passengers to walk to, from, or by the main food table in the restaurant *Viking Jarl*;

d.    failing to inspect the area around and near the main food table in the restaurant of the *Viking Jarl* to ensure that the terrazzo tile floor near and around the main food table was kept safe and dry, and free and clear of any spilt food or liquids at all times when passengers were dining or otherwise present in such dining room, and to promptly clean up any spilt food and/or liquid thereon to eliminate to the extent possible the risk of injury to passengers from slipping and

falling on such spilt food and/or water;

e.  failing to promptly clean up spilt food and/or liquids in such a high-traffic area as that near the main food table in the dining room of the *Viking Jarl*;

f.  failing to keep the terrazzo tile floor near and around the main food table in the dining room of the *Viking Jarl* free and clear of any spilt food or liquids;

g.  failing to assign staff to constantly monitor the high-traffic area around and near the main food table in the dining room of the "Viking Jarl" to ensure that such floor was kept free and clear of any and all spilt food and/or liquids at all times when passengers were dining or otherwise present in such dining room;

h.  failing to train staff to constantly monitor the high-traffic area around and near the main food table in the dining room of the "Viking Jarl" to ensure that such floor was kept free and clear of any and all spilt food and/or liquids at all times when passengers were dining or otherwise present in such dining room;

I.  failing to engage and hire properly trained persons to supervise the ship's staff charged with the responsibility to constantly monitor the

40

high-traffic area around and near the main food table in the dining
room of the "Viking Jarl" to ensure that such floor was kept free and
clear of any and all spilt food and/or liquids at all times when
passengers were dining or otherwise present in such dining room;

j.     failing to supervise ship's staff charged with the responsibility to
constantly monitor the high-traffic area around and near the main
food table in the dining room of the "Viking Jarl" to ensure that such
floor was kept free and clear of any and all spilt food and/or liquids at
all times when passengers were dining or otherwise present in such
dining room;

k.     failing to provide appropriate equipment and tools needed by the
ship's staff to ensure that the high-traffic area around and near the
main food table in the dining room of the "Viking Jarl" was kept free
and clear of any and all spilt food and/or liquids at all times when
passengers were dining or otherwise present in such dining room;

l.     failing to provide prompt and proper emergency medical care and
assistance to the Plaintiff at the time the Plaintiff was injured; and/or

m.    failing to provide proper medical care on a timely basis subsequent to
the Plaintiff being injured; and/or

n.    failing to provide adequate and appropriate assistance to the Plaintiff after the Plaintiff was injured due to the Defendant's negligence as set forth herein;

o.    failing to promulgate and/or enforce adequate and appropriate policies and procedures so as to provide the Plaintiff with the medical care and assistance and other needed assistance after the Plaintiff was injured due to the Defendant's negligence as set forth herein;

p.    failing to employ a staff member who was trained and experienced in emergency management, including but not limited to emergency medical management, on the 2015 "Passage to Eastern Europe" cruise;

q.    failing to employ a staff member who was trained and competent to assist  passengers process medical insurance claim documentation with the insurance carrier which Defendant and Plaintiff had both contracted with to supply medical insurance coverage on such cruise;

r.    failing to take reasonable steps to identify and engage, in advance, sources of qualified medical care and treatment which might be needed for the ship's passengers at each of the ports of call during the 2015 "Passage to Eastern Europe" cruise;

42

s.    failing to take reasonable steps to identify and engage, in advance,
      reliable sources of transportation which might be needed for the
      ship's passengers for medical care and treatment at each of the ports
      of call during the 2015 "Passage to Eastern Europe" cruise;

all of which negligent actions and/or omissions directly and  proximately caused
the Plaintiff to be injured and damaged, and/or which increased the Plaintiff's
pain, discomfort, mental distress, and anguish, after the Plaintiff, during regular
dining hours, slipped and fell while walking near and by the main food table in the
restaurant  of the *Viking Jarl* on spilt food and/or liquids, and/or  moisture or
condensation  which had not been  cleaned up by the ship's staff in a reasonable
and timely manner, which failure directly caused and resulted in the Plaintiff
suffering serious injury.

111.   At all times material hereto, Defendants VRC, VRIC,  and VRT,
acting in concert, also breached its/their  duty of  reasonable or ordinary care
under the circumstances by failing to properly maintain, and service the sub-
industry standard, non-slip resistant terrazzo tile used by such Defendants for the
floor of a high-traffic area of the restaurant of the *Viking Jarl* cruise vessel,
thereby allowing such flooring to be and remain an unreasonably dangerous
condition for passengers of the *Viking Jarl*.

43

112.   At all times material hereto, Defendants VRC, VRIC,  and VRT, acting in concert, also breached its/their  duty of  reasonable or ordinary care under the circumstances by failing to replace the sub- industry standard, non-slip resistant terrazzo tile used by Defendants for the floor of a high-traffic area of the restaurant of the *Viking Jarl* cruise vessel with replacement flooring that met or surpassed applicable industry safety standards, regulations, and guidelines, including but not limited to those referenced herein.

113.   No negligence on the part of the Plaintiff caused or contributed to her slip and fall occurrence on the cruise ship *Viking Jarl*.

114.   Plaintiff's injuries and damages are a direct and proximate result of Defendants' negligent failures and/or omissions alleged herein.

115.   As a direct and proximate result of the negligence of Defendants VRC, VRIC, and VRT, acting in concert  as set forth herein, the Plaintiff was injured about the Plaintiff's body, right knee, and extremities, and Plaintiff suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post traumatic stress disorder and other mental or nervous disorders, and Plaintiff has incurred medical expenses in the care and treatment of Plaintiff's injuries so suffered, and Plaintiff has suffered physical handicap, lost earnings, and lost earning capacity, both present and future, in an amount in

excess of $250,000.00 which Plaintiff expects to prove with certainty at trial.
Plaintiff's injuries caused by Defendant's negligence as set forth herein are
permanent or continuing in nature, and Plaintiff will suffer losses and impairments
in the future.  In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise,
and transportation costs.

### COUNT II - STRICT LIABILITY

### Plaintiff's Injuries Caused by Shipping Incident -

Ship Defect under 2002 Athens Protocol

116.   Plaintiff realleges, adopts, and incorporates by reference the
allegations set forth in paragraphs 1 through 115  above  as though fully alleged
herein.

117.   The 2002 Athens Protocol  defines a 'shipping incident' as
the shipwreck, capsizing, collision or stranding of the ship, explosion or fire in the
ship, <u>or defect in the ship.</u>

118.   The 2002 Athens Protocol  provides that if the death or
personal injury of a passenger is caused by a 'shipping incident,'  the carrier is
**strictly liable** therefor unless the carrier proves that the incident: resulted from an
act of war, hostilities, civil war, insurrection or a natural phenomenon of an

45

exceptional, inevitable and irresistible character, or was wholly caused by an act or omission done with the intent to cause the incident by a third party.

119. The defect in the cruise ship *Viking Jarl* at issue in this lawsuit, namely the continued use by the Defendants of a non-slip resistant, sub-industry standard terrazzo tile flooring in the high-traffic area of the restaurant of such cruise ship known by Defendants to be unreasonably dangerous, was not the result of an act of war, hostilities, civil war, insurrection or a natural phenomenon of an exceptional, inevitable and irresistible character, nor was such defect of the *Viking Jarl* wholly caused by an act or omission done with the intent to cause the incident by a third party.

120. In the case of the Plaintiff, the latent defect inherent in the continued use by Defendants of a sub-standard, unreasonably slippery and dangerous terrazzo tile floor in the restaurant of the *Viking Jarl* was a "shipping incident" which was the proximate and direct cause of Plaintiff's slip and fall occurrence and resulting serious and permanent bodily injuries, for which damages the Defendants are liable or for which Defendants are strictly liable.

## COUNT III

### Common Law - Intentional Misrepresentation

121.  Plaintiff realleges, adopts, and incorporates by reference the allegations set forth in paragraphs 1 through 120  above  as though fully alleged herein.

122.  Defendants VRC, VRIC, and VRT,  acting in concert, through their advertising, asserted false representations of fact to the public in general and to the Plaintiff in particular.

123.  Specifically, such Defendants, acting in concert, deliberately and intentionally misrepresented that the complete April, 2015 "Passage to Eastern Europe" cruise was to be entirely performed by Defendant VRC, as part of  a corporate "shell game" designed to confuse and mislead the public in general and the Plaintiff in particular as to the identity of the corporate entity(ies)  who was to perform the duties and obligations of  the party to whom the Plaintiff was paying her money in the cruise ship contract.  Such Defendants did so by such representations as the cruise vessels were "our" vessels, that "we" have won awards as the best cruise line, that the employees on board the cruise vessel at issue were "our" hired and trained employees, that "we" await to greet you on board, that "our" headquarters is in the United States, that "the company"

47

expanded into the United States, that in 2009 "Viking" launched the cruise vessel *Viking Legend*, and that the advertising regularly and consistently used the word "Viking" without specifically identifying which alter-ego, "Viking" corporate entity was being referred to.

124.   Such misrepresentations made by Defendants VRC, VRIC, and VRT, acting in concert, in the advertising, marketing and promotional materials published in print and electronically on the Internet and on television and radio, including but not limited to those set forth above, do cause and did cause Plaintiff and others to be deceived as to which specific corporate entity Plaintiff was contracting with for the provision of the cruise services and commercial activities connected with the April, 2015 "Passage to Eastern Europe" cruise, which cruise was promoted and advertised by such Defendants solely in the name of Defendant VRC.

125.   Plaintiff has been damaged and will be further damaged by the insertion herein of a corporate "alter-ego" of Defendant VRC, namely Defendant VRT.  Plaintiff may be damaged by Defendant VRC seeking to escape liability hereunder by obtaining a ruling from this Court that Defendant VRC is merely the agent of Defendant VRT and thus be released from liability hereunder.

126.   At the time such Defendants' written advertisements, television

48

advertisements, brochures, e-mails, and web site information were prepared and approved for publication (which induced the Plaintiff to purchase a cruise vacation from Defendant VRC), the Defendants, and each of them, acting in concert, knew of and were fully aware of their collective plan and corporate strategy to subsequently claim that Defendant VRC was just an agent of an as-yet unidentified principal, and that Defendant VRT was the operator of the *Viking Jarl* on the April, 2015 "Passage to Eastern Europe" cruise, and the Defendants, and each of them, knew that such characterization was false and misleading, and was done by such Defendants as an artifice to improperly and intentionally avoid civil liability to persons such as the Plaintiff who wer injured on such cruise(s).

127.   Defendants VRC, VRIC, and VRT, and each of them, acting in concert, intentionally made the misrepresentations referenced above for the specific purpose of defrauding potential customers such as the Plaintiff by giving them a false sense of security as to the accountability of the entity running and operating the cruise should something untoward occur during the cruise.

128.   Plaintiff relied upon the misrepresentations by the Defendants set forth above, as there was never the slightest limitation placed upon the role to be performed by Defendant VRC in any of the "Viking Cruises" literature and television advertisements and marketing materials published in print or

49

electronically by such Defendants.

129.    Plaintiff has suffered and possibly may suffer further as the result of the misrepresentations by such Defendants as set forth above, because such Defendants likely will seek to use such misrepresentations to deprive the Plaintiff of her day in Court as a practical matter, leaving Plaintiff with no meaningful recourse for her serious and permanent personal injuries suffered as set forth herein.

130.    Wherefore Plaintiff seeks damages as prayed above plus punitive damages.

## COUNT IV

### (Punitive Damages)

131.    Plaintiff realleges, adopts, and incorporates by reference the allegations set forth in paragraphs 1 through 130 above as though fully alleged herein.

132.    Plaintiff has herein shown that a proximate cause of Plaintiff's injuries in this cruise ship "slip and fall" case was the knowing and continued use by Defendants VRC, VRIC, and VRT, acting in concert, of defective, sub-industry standard, and unreasonably slippery terrazzo tile flooring

in the restaurant of its cruise ship, the *Viking Jarl*, known by Viking to be both a high-traffic area and a "hot spot" for passenger slip and fall injuries.

133.   As set forth herein, at all times material hereto, the negligence of the knowing use by Defendants VRC, VRIC, and VRT, acting in concert, of defective and sub- industry standard, ***non-slip resistant*** flooring in the *Viking Jarl's* restaurant was compounded and multiplied by Viking's failure to make and enforce ship policies designed to remediate any foreign substances on such floor that would increase the already-high risk of passenger slip and fall injuries.

134.   As set forth herein, Defendants VRC and VRT, acting in concert, had actual knowledge of:

(1) the prior passenger injury history and experience on the defective terrazzo tile flooring used in the restaurant of the *Viking Jarl*;

(2) industry safety standards mandating slip-resistant flooring having a high coefficient of friction (COF), ***measured when wet;*** and

(3), such Defendants' actual knowledge that the restaurant floor of such vessel was on a daily basis repeatedly contaminated by moisture and/or foreign substances, resulting in dangerous "hot spots" for passenger slips and falls.

135.   Notwithstanding Defendants VRC, VRIC, and VRT's actual knowledge of the foregoing, such Defendants, and each of them, knowingly and

recklessly, in willful and wanton disregard for passenger safety:

    (a),    failed and refused to remove the defective, dangerously slippery terrazzo tile floor in the restaurant of the *Viking Jarl*, and replace such unreasonably unsafe flooring with a flooring that met or surpassed industry-recognized standards, particularly flooring which met or surpassed industry standards for an acceptable coefficient of friction *when such flooring was wet*;

    (b)    failed and refused to adopt industry-standard policies and procedures, including but not limited to the formation of an effective "ship safety committee" staffed with qualified individuals authorized and empowered to adopt and enforce all industry-standard safety measures designed, *inter alia*, to reduce or eliminate to the extent possible the risk of "slip and fall" injuries in the restaurant and elsewhere on the *Viking Jarl*; and

    ( c)    failed and refused to take necessary steps to hire, train, and employ sufficient numbers of qualified and competent staff to consistently monitor and inspect the floor in the restaurant of the *Viking Jarl* at all times while passengers were present therein, and to perform or to direct the performance of any and all tasks or actions necessary or

desirable to minimize or eliminate to the extent possible the risk of "slip and fall" injuries in the restaurant of the *Viking Jarl*.

136.    The negligent acts and omissions by Defendants VRC, VRIC, and VRT, acting in concert,  set forth above and herein, which proximately caused Plaintiff's injuries, constitute such Defendants' willful and wanton  disregard for the safety of its passengers on the *Viking Jarl*, including the Plaintiff, who foreseeably might be harmed by those acts or omissions, and such conduct is so outrageous and shocking to the conscience that the Plaintiff is therefore entitled to recover punitive damages from Defendants VRC, VRIC,  and VRT, jointly and severally, pursuant to the New Jersey Punitive Damages Act, N. J. S. A. 2A:15-5.9.

137.    Plaintiff has been damaged by the willful and wanton misconduct of Defendants VRC, VRIC,  and VRT and/or its/their employees as set forth herein, and therefore, in addition to compensatory damages,  Plaintiff is entitled to recover punitive damages from Defendants VRC, VRIC, and VRT pursuant to the New Jersey Punitive Damages Act, N. J. S. A. 2A:15-5.9, in an amount to be determined by the enlightened conscience of a fair and impartial jury.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff CYNTHIA QUINT demands judgment in her favor for:

1.    the relief requested in COUNT I (in tort - negligent acts and omissions) recoverable under law against Defendants VRC, VRIC, and VRT RIVER CRUISES, LTD, jointly and severally, and against defendant JOHN DOE INSURANCE COMPANY when such entity is identified hereunder and served with process;

2.    the relief requested in COUNT II (strict liability in tort) recoverable under law against Defendants VRC, VRIC, and VRT RIVER CRUISES, LTD, jointly and severally, and against JOHN DOE INSURANCE COMPANY when such entity is identified hereunder and served with process;

3.    the relief requested in COUNT III (common law misrepresentations) recoverable under law against Defendants VRC, VRIC, and VRT RIVER CRUISES, LTD, jointly and severally, and against JOHN DOE INSURANCE COMPANY when such entity is identified hereunder and served with process;

4.    the relief requested in COUNT IV (punitive damages) recoverable

under law against Defendants VRC, VRIC, and VRT RIVER

CRUISES, LTD, jointly and severally;

5.      for a bifurcated jury trial first to determine liability for compensatory

damages and second, if necessary, to determine whether punitive

damages should be awarded in addition thereto; and

6.      such other and further relief as may be necessary or appropriate as

justice may require.

**Plaintiff further demands trial by jury**.

**Dated**:      May 20, 2017.


_____
GERARD HANLON
NJ Bar No. 002771973

ATTORNEY FOR PLAINTIFF
CYNTHIA QUINT


HANLON DUNN ROBERTSON SCHWARTZ
33 Market Street
Morristown, New Jersey 07960
Tel: (973) 267-8895

55

## CERTIFICATE OF SERVICE

The undersigned counsel for the Plaintiff hereby certifies that a true and correct copy of the above-described Plaintiff's Verified Amended Complaint was served on this __th day of May, 2017, by electronic service via U.S. District Court of New Jersey CM/ECF to:

> Michael E. Unger, Esq.
> Freehill, Hogan & Mahar, LLP
> 549 Summit Ave.
> Jersey City, New Jersey 07306

**Dated**:     May 30, 2017.

GERARD HANLON
NJ Bar No. 002771973

ATTORNEY FOR PLAINTIFF
CYNTHIA QUINT

HANLON DUNN ROBERTSON SCHWARTZ
33 Market Street
Morristown, New Jersey 07960
Tel: (973) 267-8895

58

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**DIVISION OF TRENTON**

| | |
|---|---|
| **CYNTHIA QUINT,** | ) |
| | ) CASE NO. 2:17-cv-01865-CCC-SCM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **VIKING RIVER CRUISES, INC.,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## VERIFICATION OF CYNTHIA QUINT

COMES NOW, CYNTHIA QUINT, plaintiff in the above-styled lawsuit, and, after being sworn, does hereby state, declare, and allege the following, in lieu of an affidavit or verification, pursuant to 28 U.S.C. § 1746:

1.     My name is Cynthia Quint. I am over the age of 21 and am otherwise competent. I have personal knowledge of each and every one of the factual allegations set forth in my attached and foregoing Amended Complaint, except where I specifically state otherwise.

2.     I have carefully read all of the statements of fact set forth in my attached and foregoing Amended Complaint, and I declare under penalty of perjury that each of the foregoing is true and correct.

56

**Dated**:        May 30, 2017,

_Cynthia Huint_ 5/30/2017
CYNTHIA QUINT (date)
Plaintiff

57